Filed 11/17/25  In re I.V. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re I.V., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E085675 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2400480) |
| v. | OPINION |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Reversed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

In this dependency matter, J.C. (mother) argues no substantial evidence supports the court's findings that there is a substantial risk of physical harm to her children or that they were left without provision for support by their incarcerated father. We agree and reverse the juvenile court's jurisdictional order and the dispositional orders that derived from it.

BACKGROUND

Mother lives with her two children—I.V. (born 2018) and L.V. (born 2020)—the children's maternal aunt, the maternal aunt's daughter A.C.C., and the maternal grandmother. Father is incarcerated.

In October 2024 mother and maternal aunt went to a barbecue with their children. At some point, maternal aunt went to get formula for A.C.C. and left A.C.C. in mother's care. A.C.C. was in her car seat on the ground, but was not secured in her car seat. At some point after maternal aunt left, the car seat tipped over and A.C.C. fell out and hit her head. A.C.C. cried for a bit, then stopped, and mother did not see any injuries.

The next day the maternal aunt noticed a bump on A.C.C.'s head and took A.C.C. to the emergency room. The emergency room cleared A.C.C. to return home without any imaging.

Ten days after the first emergency room visit, maternal aunt took A.C.C. to see her primary care doctor, who advised that maternal aunt should take A.C.C. back to the

2

emergency room. The emergency room again cleared A.C.C. to leave without any imaging. A.C.C.'s primary care doctor ordered imaging, which revealed a skull fracture. Maternal aunt then took A.C.C. to the hospital, where A.C.C. was diagnosed with a bilateral skull fracture and subdural hematoma.

The department received an immediate response referral regarding both A.C.C. and mother's own children. The department went to mother's home, and mother welcomed them in and helped them check her children's bodies. The children seemed healthy, content, and free from any visible marks or injuries.

Mother told the department about the incident at the barbecue. She also said she does not normally care for A.C.C., and that maternal grandmother watches the children when either maternal aunt or mother need childcare. The department found the home satisfactory, with working utilities and adequate food and furnishings. I.V. reported feeling safe in the home and L.V. said she was not afraid of anyone in the home.

The department told mother it did not believe her version of events accounted for the injuries A.C.C. sustained. Mother said she did not have any additional details to provide, that she was telling the truth, and that " '[e]verything happened so fast. It was truly an accident.' "

The department also spoke to maternal grandmother. She said she did not have any concerns for any of the children and denied A.C.C. was injured while in her care.

Later that day, the doctor with the hospital's forensic team called the department and informed them the fracture was large, and that he was "concerned about [mother's]

3

account of how the injury occurred as it is not in alignment or consistent with the type of fractures found on the child." The doctor was unsure how old the fracture was, but knew it was caused by some kind of blunt force trauma. The doctor also stated "the injury could have been accidental, but the story does not line up with the type of fracture." The next day, the doctor texted the department that "I know they're saying there was just that one incident, but it's hard to say for sure if there wasn't any other incidents with [maternal aunt] or anyone else too." He specified that he knew this did not clarify anything but "just wanted to bring up the point that I guess since [mother] is giving us a mechanism that doesn't seem compatible with the injury, I wouldn't want to rule out any other possibility of an injury happening outside of the one that they proposed."

On November 5, 2024, the department filed a petition alleging both I.V. and L.V. fell under Welfare and Institutions Code, section 300.[1] The petition made three allegations: b-1 and b-2 in support of finding jurisdiction under section 300, subdivision (b), and g-1 in support of finding jurisdiction under subdivision (g). Only b-1 concerned mother, and alleged "[o]n or about October 06, 2024, the mother was providing care and supervision for her niece, A.C.C., who sustained a skull fracture while under her care . . . It was determined the child's injury is suspicious for physical abuse therefore there is concern for [mother's] children." B-2 alleged father was not a member of the children's household and does not provide for them—leaving them at risk of

---

[1] Unlabeled statutory citations refer to the Welfare and Institutions Code.

4

physical harm. G-1 alleged father left the children with no provision for support while he was incarcerated.

Both I.V. and L.V. were given a forensic medical examination, and the doctor reported no concerns of abuse for either child.

On November 21, 2024, the court found the petition stated a prima facie case and ordered family maintenance services.

The department interviewed the children in December 2024. L.V. told the department she sometimes head-butts A.C.C. and that A.C.C. cries when she does. Mother said she did not know about this behavior. She said maternal aunt did know about it though, and that in any case L.V. is never left alone with A.C.C.

The department reported before the jurisdiction/disposition hearing that "[t]hroughout this investigation, the children have shown no fear of their mother," and "have not reported being abused or neglected." The department said mother "is providing adequate housing, clothing and medical needs," and that "[t]he children are very bonded to their mother and spoke of being happy in her care." It ultimately concluded that "[i]t is unclear how [A.C.C.] . . . got injured," and that "[t]he concern for physical abuse pertaining to [I.V. and L.V.] was mitigated when the doctor who conducted their physical exams reported there were no suspicious signs of abuse on the children."

The trial court held the jurisdiction/disposition hearing in January 2025. Mother denied the allegations. The trial court found all three allegations true, found the children

5

fell under section 300, subdivisions (b)(1), (b)(2), and (g)(1), and ordered continued family maintenance services.

DISCUSSION

**A. Allegations b-1 and b-2**

A juvenile court may take jurisdiction of a child under section 300, subdivision (b)(1), only if it finds by a preponderance of evidence that the " 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child.' " The social service agency bears the burden to demonstrate the following three elements: "(1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) " 'The basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm.' " (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022 (*J.N.*).)

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.]

6

"We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' " ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Here, the record contains no evidence the children were at a substantial risk of physical harm due to mother injuring A.C.C.'s child. Indeed, there is scant evidence mother's actions caused any harm to any child, let alone that she is a continuing risk of any degree to her own children.

A.C.C. fell out of her car seat while in mother's care, and the next day A.C.C. went to the emergency room only to be sent away without imaging. We also know that A.C.C. experienced a skull fracture at some point, which doctors discovered ten days after the car seat incident. However, the department admits the cause of that fracture, and even when it occurred, is unknown. The forensic doctor said he could not rule out other causes of injury, including accidental injury, and that he could not determine how old the fracture was. The only evidence linking the barbecue incident to the injury is that maternal aunt noticed a bump on A.C.C.'s head the next day. The medical evidence, however, showed it was unlikely a fall from the car seat caused the observed injury. It is entirely possible that mother is telling the truth, and that the reason her story does not match A.C.C.'s injury is because the child falling out of her car seat did not cause the

7

injury. Thus, as mother correctly points out, the proposed causal link between her actions and A.C.C.'s injuries is circumstantial, bordering on speculative.

It is possible to speculate that mother is lying about the mechanism of injury and that the skull fracture indeed happened at the barbecue while the child was in mother's care. But it is just as possible that the skull fracture happened before the barbecue or in the 10 days after the barbecue before it was discovered, while the child was not in mother's care. There is no non-speculative basis in the record to decide either way.

Moreover, there is no evidence, let alone substantial evidence, that mother poses a substantial risk of harm to her own children. Neither of mother's children reported feeling unsafe or afraid in her home. Neither appeared afraid of mother in any of the department's visits. Neither showed any signs of abuse or neglect. The department itself acknowledged that "[t]he concern for physical abuse pertaining to [I.V. and L.V.] was mitigated when the doctor . . . reported there were no suspicions signs of abuse on the children."

In short, all the evidence demonstrates that I.V. and L.V. were well cared-for and that there was no reason to be concerned for their welfare. The only basis for the trial court to assert jurisdiction over I.V. and L.V. was mother's possible role in A.C.C.'s injuries, not any evidence of harm or risk of harm to I.V. and L.V. But generally speaking "the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' " (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) And

8

in this case, there is no non-speculative basis to conclude mother *ever* caused a child physical harm.

Indeed, a single incident is not necessarily sufficient evidence of a continuing risk of harm even when that incident involved flagrantly illegal and reckless behavior that directly harmed the parents' own children. In *In re J.N.*, *supra*, 181 Cal.App.4th at pp. 1014-1015 the trial court found jurisdiction over three children after two were injured in a car accident. Before the accident, both parents were intoxicated, the father was driving, and their three children were improperly fastened in their seats. The father hit a car, then sped away and hit a traffic pole. (*Ibid.*) Two of his children were injured in the crash. (*Ibid.*) The father tried to flee the scene with one of his children but failed, and both he and the mother were belligerent with bystanders and police. (*Id.* at p. 1015-1016.)

Despite the parents' obvious bad conduct—conduct which directly resulted in injuries to their own children—the reviewing court held there was insufficient evidence this single incident showed the parents' children were at a substantial risk of harm by the time of the jurisdiction hearing. The court concluded that "[d]espite the profound seriousness of the parents' endangering conduct on the one occasion in this case, there was no evidence from which to infer there is a substantial risk such behavior will recur." (*In re J.N.*, *supra*, 181 Cal.App.4th at p. 1026.) The court reasoned that the parents' lapse in judgment was alcohol related, and there was not sufficient evidence they had an ongoing substance abuse problem. (*Ibid.*) Meanwhile "[t]he evidence consistently

indicated that the children were healthy, well adjusted, well cared for, bonded with each other, and developing appropriately." (*Ibid.*)

The facts underlying this case are significantly less serious than those in *In re J.N.* Unlike in *In re J.N.*, we do not know what injured A.C.C., do not know whether mother caused the injury, cannot rule out that the injury was completely accidental, and know for certain that mother's own children have not been harmed. As in *In re J.N.*, mother's children are "healthy, well adjusted, well cared for, bonded with each other, and developing appropriately." (*In re J.N.*, *supra*, 181 Cal.App.4th at p. 1026.)

Accordingly, we conclude there was no substantial evidence to support the trial court's true finding on allegation b-1 that mother's conduct represented a substantial risk of harm to I.V. and L.V.

We also conclude the court's true finding on allegation b-2 was not supported by substantial evidence. B-2 alleges father failed to provide for his children, specifically that he "is not a member of the children's household and he fails to provide the children with adequate food, clothing, shelter, medical treatment and protection." The law is clear, however, that "incarceration, without more, cannot provide a basis for jurisdiction," under section 300, subdivision (b). (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366.) This is because subdivision (b), requires the children suffer or be at substantial risk of suffering serious physical harm. A parent's incarceration, without more, does not place their children at serious risk of physical harm. (*Ibid.*) The uncontroverted evidence here is that the children currently have adequate food, clothing, shelter, medical treatment, and

10

protection. Father cannot provide for the children himself because he is incarcerated, but by all accounts they have everything they need while in mother's care. We therefore conclude the court's true finding on allegation b-2 is also not supported by substantial evidence.

Because substantial evidence did not support either of the alleged bases for jurisdiction under section 300, subdivision (b), the court's finding that the children fell under subdivision (b) must be reversed.

**B. Allegation g-1**

The department correctly concedes that substantial evidence does not support the trial court's true finding on allegation g-1. Section 300, subdivision (g), permits a court to assert jurisdiction over a child when "the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child." (§ 300, subd. (g).) However "[t]here is no 'Go to jail, lose your child' rule in California." (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1077.) As long as a parent can "*arrange for* care of [their child] during the period of [their] incarceration, the juvenile court ha[s] no basis to take jurisdiction." (*Ibid.*) Here, it is uncontested that father arranged for the care of his children with mother. We therefore agree with the parties that substantial evidence did not support the court's true finding on allegation g-1, nor its assertion of jurisdiction under subdivision (g).

"Because we conclude that the jurisdictional findings must be reversed, the dispositional order . . . also must be reversed." (*In re I.S.* (2021) 67 Cal.App.5th 918, 933.)

## DISPOSITION

We reverse the jurisdictional findings and dispositional orders. We remand to the juvenile court for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL       
<br>                           J.

We concur:


McKINSTER      
<br>       Acting P. J.


MILLER       
<br>          J.